1
2
3
4

Michael C. Sternberg, Self Represented
8545 W Warm Springs Rd Ste A4 #256
Las Vegas, NV 89113
702.234.2539
sternberg_michael@yahoo.com
Plaintiff

**FILED**

JUL 16 2024

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

5
6
7

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE

8
9
10
11
12
13
14
15

MICHAEL C. STERNBERG

Plaintiffs

v.

CINDY SEELEY HENDRICKSON, et al.

Defendants

Case No.

**C 24 04271 VKD**

**COMPLAINT**

16
17
18
19
20
21
22
23
24
25
26
27
28

# PARTIES

1. The Plaintiff is: Michael C. Sternberg, 8545 W Warm Springs Rd Ste A4 #256, Las Vegas, NV 89113, 702.234.2539, sternberg_michael@yahoo.com

2. The Defendants are:

  Cindy Hendrickson, 191 N First Street, San Jose, CA 95113, (408) 534-5610, department65@scscourt.org

  Brooke Blecher, 191 N First Street, San Jose, CA 95113, (408) 534-5610, department72@scscourt.org

  Roberta Hayashi, 191 N First Street, San Jose, CA 95113, (408) 695-5070, department105@scscourt.org

  Thomas Kuhnle, 191 N First Street, San Jose, CA 95113, (408) 534-5610, department73@scscourt.org

  Beth McGowan, 191 N First Street, San Jose, CA 95113, (408) 882-2700

Mary Greenwood, 333 West Santa Clara Street Suite 1060, San Jose, CA 95113, (408) 277-1004, sixth.District@jud.ca.gov

Patricia Guerrero, California Supreme Court, 350 McAllister Street, San Francisco, CA 94102, 415-865-7000

**JURISDICTION**

3. Jurisdiction. The issues in this case pertain to federal questions and constitutional rights. This court has jurisdiction pursuant to 28 USC 1331, 28 USC 1343, 28 USC 1367, 28 USC 2201, 42 USC 1983.

4. Venue. Venue is appropriate in this court, because most of the defendants work in the City of San Jose and Santa Clara County. A substantial part of the events I am suing about happened in this district. All defendants live and work in California.

5. District Assignment. Because this lawsuit arose in Santa Clara County, it should be assigned to the San Jose Division of the Court.

**STATEMENT OF FACTS**

6. E.W. was born in Las Vegas, NV in 2009.

7. N.W. was born in San Jose, CA in 2010.

8. I am the natural father of E.W. and N.W. I am listed as the father on their birth certificates.

9. Shelley Warneck is the natural mother of E.W. and N.W. She is listed as the mother on their birth certificates.

10. Warneck and I moved to San Jose, CA shortly after E.W.'s birth and resided their together.

11. On 7/10/2012, Warneck and I agreed that we would end our intimate relationship and that I would move out of the family home.

12. On 7/13/2012, Warneck surreptitiously filed a family court action in Santa Clara County Superior Court, Case No. 2012-1-CP-020194.

13. After filing the family court action, Warneck violated our private agreements and withheld E.W. and N.W. from me.

14. On 8/3/2012, I filed an ex parte emergency motion asking the Santa Clara court to enforce our agreement.

15. On 8/14/12, Warneck and I attended the hearing on my ex parte motion.

16. On 8/14/12, I stipulated in open court that I was the father of E.W. and N.W. and to temporary joint legal custody. I made no other stipulations. The court issued temporary visitation orders.

17. On 8/28/12, the Santa Clara County Family Court filed a Finding and Order After Hearing, which accurately reflected the court's orders at the 8/14/12 hearing.

18. On 8/28/12, I signed the following: 1) "Stipulation for Entry of Judgement RE: Establishment of Parental Relationship," 2) "Advisement and Waiver of Rights RE: Establishment of Parental Relationship," and 3) "Appearance, Stipulation, and Waivers." All other issues were reserved pending litigation. The three forms I reviewed and signed were then transmitted to Warneck's attorney.

19. In 09/2012, Warneck and I discussed dismissing the action in favor of operating by private agreement.

20. In 10/2012, Warneck and I agreed to dismiss the family law action by executing a request for dismissal.

21. On 10/4/12, a so-called "stipulated judgement" that I did not stipulate to was entered in the court with no notice to me, without my consent, and in violation of the local court rules and the California civil procedure. Attached to it was an FL-341 temporary custody order that I never agreed to, that was not presented to me, and was not included with the paperwork I did sign. The filed judgment is for joint legal and joint physical custody, which I did not agree to. It does not give either party the presumptive right to relocate the children without the other parent's consent. I was unaware of the filing.

22. From about 10/2012 to 01/2013, Warneck and I tried unsuccessfully to get answers from our attorneys as to the status of our dismissal.

23. In 01/2013, we were advised that the Request for Dismissal had been lost. We executed a new Request for Dismissal.

24. From 01/2013 to 07/2019, Warneck and I co-parented as if the case was properly dismissed. I believed the case was dismissed.

25. In 08/2018, Warneck and I agreed that the children would permanently reside in Las Vegas, NV.

26. In 08/2018, Warneck and I agreed that I would be the primary parent until she returned from inpatient rehabilitation after a DUI, and after conclusion of her criminal DUI case in El Dorado County, CA.

27. In 08/2018, Warneck and I agreed that once her rehabilitation and DUI criminal case obligations were concluded, she would move permanently to Las Vegas, NV, and we would return to a more equal and scheduled custody arrangement.

28. In approximately 11/2018, Warneck reached a plea agreement with the El Dorado County District Attorney regarding her DUI criminal case.

29. Shortly after executing her plea agreement, Warneck plotted to relocate the children from Las Vegas, NV back to California without my consent and without warning me.

30. From approximately 11/2018, Warneck met with various California family law attorneys and did not tell me.

31. On 1/30/2019, Derek Austin filed a Substitution of Attorney into the Santa Clara County family law case that Warneck and I had agreed to dismiss in 2012.

32. On 2/1/2019, Derek Austin filed another Substitution of Attorney removing himself from the case.

33. Derek Austin served by mail the 1/30/2019 and the 2/1/2019 Substitution of Attorney forms to an address that Warneck knew was not mine.

34. Warneck consulted with Santa Clara County, CA family lawyer Tristan Aeschleman in 03/2019, and did not tell me.

35. In 05/2019, Warneck and I agreed to a summer visitation schedule.

36. In 05/2019, Warneck and I agreed she could remove the E.W. and N.W. from Las Vegas, NV to spend specific time periods with her and their grandparents in California and Hawaii.

37. In 05/2019, Warneck did not disclose to me that she had discovered that the 2012 case was not properly dismissed.

38. In 05/2019, Warneck did not disclose to me that she had plans to withhold the E.W. and N.W. in California.

39. In 05/2019, Warneck and I agreed she was to return the E.W. and N.W. to Las Vegas, NV on 7/7/19.

40. On 7/1/19, Warneck filed a motion in the Santa Clara County, CA family court and did not tell me. She did not serve it on me in 2019.

41. On 7/7/19, Warneck did not return the children to Las Vegas, NV.

42. On 7/7/19, Aeschleman emailed me claiming to represent Warneck. He informed me that he was aware of our agreements, but that they would not return my children unless I modified the agreements or until a court ordered them to do so.

43. On 7/7/19, Aeschleman advised me that he and Warneck were resurrecting the Santa Clara County, CA case.

44. Aeschleman did not substitute into the Santa Clara County, CA case prior to emailing me.

45. Aeschleman did not obtain the Santa Clara court record prior to emailing me.

46. On 7/7/19, Warneck withheld E.W. and N.W. in El Dorado County, CA and Santa Clara County, CA.

47. On 7/10/19, I filed a child custody case in Clark County, NV. I asked for an order shortening time and an emergency pick up order.

48. On 7/22/19, Warneck filed another motion in the Santa Clara County, CA family court, and did not tell me. She did not serve it on me in 2019.

49. On 7/30/19, Warneck filed an answer to the Clark County, NV custody case.

50. In 7/2019, Warneck defended the Clark County, NV custody case claiming to have never given up California residency.

51. On 7/30/19, Aeschleman executed a Request to Continue Hearing in the Santa Clara, CA court for his motion filed on 7/1/19. He declared under penalty of perjury that the motions papers could not be served prior to the scheduled hearing. He did not disclose to the court in his sworn request that Warneck had been served a child custody lawsuit in Nevada, and that I could be served at the Las Vegas hearing on 7/31/19.

52. On 7/31/19, Warneck and I attended a hearing in the Clark County, NV case.

53. On 7/31/19, Warneck admitted in open court to having an apartment in Henderson, NV.

54. On 7/31/19, Warneck admitted in open court she registered to vote in Henderson, NV, "to partake in the 2018 midterm elections."

55. On 7/31/19, Warneck admitted in open court to certifying, under penalty of perjury, the voter registration from, which stated on its face, "The residential address listed herein is my sole legal place of residence and I claim no other place as my legal residence."

56. On 7/31/19, Warneck admitted in open court she entered into the summertime visitation agreement with me under false pretenses.

57. On 7/31/19, Warneck admitted in open court she understood I would not let the children out of Nevada without an agreement.

58. On 7/31/19, Clark County, NV Judge Forsburg decided to hold a jurisdictional conference with the Santa Clara County, CA court.

59. On 8/6/19, Aeschleman filed a sworn declaration in the Santa Clara County, CA court, which he did not serve on me.

60. On 8/7/19, there were no noticed motions in the Santa Clara County, CA case.

61. On 8/7/19, I had not been served with anything filed in 2019 in the Santa Clara County, CA case.

62. On 8/7/19, Judge Roberta Hayashi of the Santa Clara County Superior Court started the jurisdictional conference by admitting to having read the ex parte declarations sent to her by Aeschleman and Warneck just before the conference. These documents were never served on me.

63. On 8/7/19, Hayashi aggressively advocated for Shelley Warneck for the entire conference based on the those ex parte declarations.

64. On 8/7/19, my Las Vegas lawyer objected to the lack of notice of the ex parte declarations and asked for a chance to file a response.

65. On 8/7/19, Hayashi refused to allow me to file a response to the ex parte documents she had read.

66. On 8/7/19, Nevada Judge Forsburg acquiesced to Hayashi's aggressive demeanor and ceded jurisdiction to Santa Clara County, CA, after Hayashi, while advocating for Warneck, proclaimed that there was a proper judgement on file in Santa Clara.

67. In 8/2019, neither the parties nor the children lived in Santa Clara.

68. On 8/8/19, I hired California family lawyer Magdalena Chattopadhya for the explicit purpose of challenging the jurisdiction of the Santa Clara County, CA pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act.

69. On 8/8/19, I hired Chattopadhya to challenge jurisdiction of the Santa Clara County, CA Superior Court on three grounds: 1) All parties left California, 2) Inconvenient Forum, and 3) Unjustifiable Conduct.

70. On 8/21/19, Aeschleman sent an ex parte communication to Hayashi by mail.

71. On 8/21/19, Aeschleman's ex parte communication to Hayashi included a proposed Finding and Order After Hearing (FOAH) for signature. The proposed FOAH was for the 8/7/19 jurisdictional conference.

72. On 8/21/19, Aeschleman asserted he was ordered by Hayashi to initiate the ex parte communication and to draft the FOAH.

73. The Nevada produced video of the 8/7/19 hearing documents no such order given to Aeschleman.

74. The California produced transcript of the 8/7/19 hearing documents no such order given to Aeschleman.

75. On 8/21/19, the proposed FOAH made finding of facts and conclusions of law on which I was given no notice or opportunity to be heard.

76. On 8/28/19, I emailed Aeschleman asking him to rescind the proposed FOAH he sent to Hayashi on 8/21/19, and advised him that he was violating court rules.

77. On 8/29/19, Aeschleman executed another sworn Request to Continue Hearing in the Santa Clara County, CA court for his motions filed 7/1/19 and 7/22/19. Aeschleman checked box 5d "Other good cause as stated," on his Request to Continue Hearing. Aeschleman swore under penalty of perjury, that his good cause was his inability to serve me. Aeschleman did not disclose to the court in his Request to Continue Hearing, that I had been standing next to Warneck's Nevada attorney in the Nevada court on 7/31/19 and 8/7/19, and that he had substantial notice that I would be there, and that I could be served there.

78. On 9/10/19, Chattopadhya sent Aeschleman an email asking if he had rescinded the jurisdictional FOAH he had sent ex parte to Hayashi on 8/21/19.

79. On 9/11/19, Chattopadhya sent Aeschleman a follow up email asking if he had rescinded the jurisdictional FOAH he had sent ex parte to Hayashi on 8/21/19.

80. On 9/11/19, the clerks filed my motion to cede jurisdiction in the Santa Clara, CA family court case.

81. On 9/18/19, we had the hearing on my motion to cede jurisdiction.

82. On 9/18/19, Hayashi described Aeschleman's inability to serve me as "ludicrous."

83. On 9/18/19, Warneck admitted in open court that she entered into an agreement with me under false pretenses to remove the children from Nevada.

84. On 9/18/19, Warneck admitted in open court to knowing that I would not have allowed the children out of Nevada without the agreement.

85. On 9/18/19, Warneck admitted that she did not disclose to me her intent to resurrect the California case and to file motions in that court.

86. On 9/18/19, towards the end of the hearing, Hayashi conceded that she needed to entertain ceding jurisdiction to Las Vegas, NV, and "*it may well be that on the recommendation of the brief focused assessment if the recommendation is that the best interest of the children be that they return to Las Vegas that it would then make sense for*

me to cede jurisdiction of this matter back to Las Vegas, because that's where the children are located."

87. On 9/18/19, Chattopadhya asked Hayashi, "*And then all other issues reserved. The request for change of venue is reserved for now.*"

88. On 9/18/19, Hayashi responded to Chattopadhya, "*Well, I've indicated to you what I intend to do with regard to venue; and that is, to find out what the recommendation is from the brief focused assessment as to where the children should be whether it's in Las Vegas or in El Dorado County.*"

89. On 9/18/19, Hayashi further elaborated to Aeschleman, "*...my tentative is going to be that if the brief focused assessment recommends that the children be in El Dorado county then I will transfer venue to El Dorado County. If the brief focused assessment is that it's in the best interest of the children to be in Las Vegas then I will transfer — I will cede jurisdiction back to the Las Vegas court...*"

90. On 9/19/19, based on Hayashi's representations, and in order to quickly see my abducted children, I mediated a temporary custody arrangement in good faith.

91. On 9/19/19, a Request and Order Regarding Partial Mediated Agreement was entered with the court's notation, "*This is a temporary order pending further order of the court following a brief focused assessment.*"

92. On 9/27/19, Hayashi signed, without notice to me, the void FOAH Aeschleman sent to her ex parte on 8/21/19. It was filed on 10/1/19.

93. On 10/30/19, Chattopadhya attended a hearing without me, but with my stipulation for Tim Rood to do the Brief Focused Assessment.

94. On 10/30/19, Hayashi, Chattopadhya, and Aeschleman conspired to change the track of this case from a brief focused assessment and a jurisdictional analysis to a full blow custody evaluation without notice to me as a party to this case and without my consent.

95. On 10/30/19, Hayashi, Chattopadhya, and Aeschleman altered my agreement for Tim Rood to do the Brief Focused Assessment without notice to me and without my consent.

96. On 12/10/19, Aeschleman stated in open court, *"The other issue of concern is that the mediated agreement said that this was going to be a temporary order pending further court order following a brief focused assessment."*

97. On 12/10/19, Hayashi admitted she did not anticipate the Brief Focused Assessment to go past January.

98. On 12/10/19, Hayashi refused to return my abducted children to Las Vegas.

99. On 12/10/19, Hayashi refused to issue temporary orders protecting my access to my children.

100. On 12/10/19, Hayashi, Aeschleman, and Chattopadhya set trial dates for 7/1/19 and 7/2/19 on unclear issues, and without notice to me or my informed consent.

101. On 1/15/20, due to Hayashi's refusal to issue orders to protect my access to my abducted children, I signed a stipulation under duress in order to see them.

102. The 1/15/20 stipulation I signed outlines visitation dates "pending the Custody Settlement Conference in March 11, 2020." The document states that I am specially appearing.

103. On 1/22/20, Judge Hendrickson signed a FOAH for a hearing on 1/7/20 that was heard by Hayashi. The FOAH states on its face that I am specially appearing.

104. On 2/14/20, I filed a motion for attorney fees and sanctions, because I could no longer afford my legal bills and the visitation costs dumped on me to see my abducted children.

105. On 3/11/20, the custody settlement conference (CSC) was continued to 5/13/20. At some point the CSC was continued to June.

106. On 3/23/20, I fired Chattopadhya, and hired Gina Policastri.

107. From 3/20/20 thru 6/24/20 and beyond, the COVID pandemic put California on severe lockdown causing numerous delays in the court.

108. On 4/11/20, Rood issued his final report concluding that the children should be returned to Las Vegas.

109. On 5/8/20, Tim Rood sent an ex parte letter to Hendrickson.

110. On 5/8/20, Rood, in his letter, proclaimed urgent concern for the children given the uncertainty of a custody settlement conference and trial actually occurring due to pandemic court closures.

111. On 5/8/20, Rood, in his letter, quotes several statements by E.W. and N.W. that exist nowhere in his complete file.

112. On 5/20/20, Aeschleman filed a motion to quash subpoenas Policastri had issued. The court set the hearing date for after the 7/1/20 and 7/2/20 trial dates.

113. On 6/17/20, because I did not have needed discovery, the trial issues were unclear, I had no experts, no more money, and it wasn't certain I was even going to get a trial during the pandemic, I signed a conditional stipulation under duress to continue the trial in order to protect my access to my children.

114. On 6/24/20, I sent Policastri into a hearing with Hendrickson without me, but with the stipulation.

115. On 6/24/20, Hendrickson went into a lengthy soliloquy based on the hearsay ex parte letter from Rood dated 5/8/20 about her concern for my children whom she had never met.

116. On 6/24/20, Hendrickson ambushed the attorneys by stating if they did not go forward with trial, she would seize my children for another entire school year.

117. On 6/24/20, Hendrickson, despite knowing that I was not present at this hearing, stated *"So I guess it's up to father to decide whether he wants to withdraw his request for the continuance or not."*

118. On 6/24/20, Hendrickson, Policastri, and Aeschleman conspired to alter my stipulation to continue the trial without notice to me, without opportunity to be heard, and without my consent.

119. On 6/24/20, Policastri lied to me about the nature of the hearing, and that she had objected to the alteration of my stipulation.

120. On 7/23/20, I fired Policastri.

121. On 8/20/20, Hendrickson denied the ex parte motion stating, "*Father's objections to 2019 court rulings will not be entertained in the trial court.*"

122. On 8/20/20, Hendrickson denied the ex parte motion falsely stating, "*The referenced 2020 order was agreed to by the parties as a condition to the Court's granting of their mutual request to continue the custody and visitation trial in this matter,*" knowing full well I was not present at that hearing to agree to anything, nor was I given notice.

123. On 9/13/20, I finally acquired a transcript of the 6/24/20 hearing. Santa Clara, CA court staff intentionally made it difficult for me to track down the reporter.

124. On 11/20/20, I filed a Petition for Writ of Mandamus asking the California 6th District Court of Appeals to order Hendrickson to vacate void orders and to rule on my jurisdictional challenge.

125. On 12/2/20, there was a status conference in this case. I was given no advance warning that there would not be a court reporter present. Prior to this conference, there had always been a court supplied reporter present.

126. On 12/2/20, Hendrickson proclaimed that she looked into the history of this case and it was never a move-away case (referring to my pending 8/20/20 motion and Petition for Writ of Mandamus).

127. On 12/8/20, I executed Standing Objections to due process violations and a notice of rescission of agreements and stipulation which I made under duress after my children had been abducted.

128. On 12/15/20, I executed and filed written objections to the 12/2/20 status conference regarding Hendrickson's assertion about the nature and history of this case, which were clearly contradicted by the self-authenticating record.

129. On 12/29/20, the 6th District Court of Appeals summarily denied my Petition for Writ of Mandamus without explanation.

130. On 1/11/21, we had a hearing on my motion for contempt against Warneck for visitation violations outlined in the 2012 judgement that both Warneck and the court claimed had been in "full force and effect" pursuant to the void jurisdictional FOAH filed on 10/1/19.

1    131. Just prior to the 1/11/21 contempt hearing, Aeschleman prepared a declaration in

2         opposition to the contempt, which he filed and delivered ex parte to Hendrickson without

3         ever having served me.

4    132. At the hearing on 1/11/21, Hendrickson went into a long bizarre line of questioning

5         about the best interests of the children, which is not an element of contempt.

6    133. On 1/11/21, Hendrickson dismissed the contempt action on her own motion.

7    134. On 1/11/21, I raised with Hendrickson my inability to access my own court file.

8         Hendrickson refused to listen to my concern and forcefully ended the hearing.

9    135. On 2/1/21, we had a hearing on my motion to vacate void orders, to cede jurisdiction,

10        and to return custody of my abducted children back to me in Las Vegas.

11   136. On 2/1/21, I requested a Statement of Decision as required by law. Hendrickson refused.

12   137. On 2/1/21, Hendrickson went on a bizarre tirade about the number of pages in my

13        filings, which comported with the California Rules of Court.

14   138. On 2/1/21, Hendrickson stated that she had read my moving papers, but then suddenly

15        announced during her tirade that she had not read them all. She then refused to allow me

16        to supplement my argument.

17   139. On 2/1/21, Hendrickson denied my motion to vacate void orders despite the clear, self-

18        authenticating evidence, in the court's own file, documenting that I had been repeatedly

19        denied notice and opportunity to be heard.

20   140. On 2/1/21, Aeschleman did not disclose to the court his first-hand knowledge of the

21        procedural history of the case when he defrauded the court out of an order for sanctions.

22   141. On 4/7/21, I spoke with Sherry Diamond, CEO of the Santa Clara County Bar

23        Association, on the phone.

24   142. On 4/7/21, Diamond told me she would email me the policy on how Local General Rule

25        3B complaints are processed.

26   143. On 4/7/21, Diamond emailed me the policy on Local General Rule 3B complaints.

27   144. On 4/7/21, Diamond did not disclose to me that the Local General Rule 3B complaint

28        process was a sham.

145. On 6/1/21, I filed a Statement to Disqualify Hendrickson for bias pursuant to California Civil Procedure 170.3(c)(1).

146. On 6/3/21, I emailed Sherry Diamond to confirm she was still CEO of the Santa Clara Bar and the address to which I could send my 3B complaint. She confirmed the same day.

147. On 6/7/21, I mailed a letter, dated 6/5/21, to Presiding Judge Theodore Zayner, Santa Clara County Superior Court. In the letter, I reported the abduction of my children, other constitutional rights violations, and Aeschleman's fraudulent filings with the court. I also complained of bias under Local General Rule 3B.

148. On 6/7/21, I mailed a copy of the 6/5/21 Zayner letter to Sherry Diamond.

149. On 6/7/21, I emailed a copy of the 6/5/21 Zayner letter to Sherry Diamond.

150. On 6/11/21, I sent Zayner a complaint about Aeschleman's fraudulent ex parte filings with the court. Attached to the letter was evidence that Aeschleman had served me a different version of a motion than what was filed with the court.

151. On 6/11/21, I emailed Diamond the 6/11/21 Zayner letter.

152. On 6/14/21, I filed a Declaration of Facts constituting contempt against Aeschleman for filing a fraudulent ex parte motion with the court.

153. On 6/16/21, I entered into a summertime agreement with Warneck in order to get time with my children. This was after they had already been abducted from Las Vegas, NV, El Dorado County and South Lake Tahoe refused to do anything about it, and Hayashi and Hendrickson refused to issue any orders to protect my access to my abducted children. I was explicit that I was not making any agreements that mother was the primary parent during the school year or any other agreements.

154. On 6/17/21, I filed a Notice of Appeal for the order that came out of the 2/1/21 hearing.

155. On 6/18/21, Hendrickson filed an Order Striking her own disqualification in violation of the civil procedure.

156. On 6/30/21, I filed a Request to Waive Court fees.

157. On 7/1/21, a stipulation was filed outlining summer break visitation.

158. On 7/6/21, Judge Brooke Blecher denied my fee waiver request.

1    159. On 7/15/21, Hendrickson stuck my second attempt to disqualify her in violation of the

2        civil procedure.

3    160. On 7/20/21, Zayner sent me a letter confirming he had received my 6/5/21 and 6/11/21

4        complaints.

5    161. On 7/23/21, Aeschleman filed another fraudulent ex parte.

6    162. On 7/26/21, I filed a second Declaration of Facts constituting contempt against

7        Aeschleman for filing yet another fraudulent ex parte with the court.

8    163. On 7/28/21, Aeschleman filed another fraudulent ex parte and did not disclose the

9        background of the summertime visitation agreement to the court. Instead he asserted that

10       prior court orders gave Warneck primary custody during the school year. Aeschleman has

11       been perpetuating this fraud for five years. Aeschleman attached to the ex parte a 6/14/21

12       email chain showing what my position was. But Aeschleman did not attach or mention to

13       the court, the 6/16/21 email which finalized the agreement. Kuhnle granted Aeschleman's

14       order shortening time on this fraudulent ex parte which is the typical way the court has

15       repeatedly denied me due process. Aeschleman was ordered to serve me up to 5 days

16       prior to the hearing.

17   164. On 7/28/21, I filed an emergency ex parte order requesting a restraining order enjoining

18       Aeschleman from filing any more ex parte motions pending further order of the court. I

19       also asked for an emergency order directing the clerk to give a copy of the register of

20       actions for my case. Concurrently, I filed a motion for an order to show cause RE: the

21       two statements of contempt I filed against Aeschleman. Judge Kuhnle denied the

22       emergency orders. Judge Kuhnle set my motion for hearing on 8/11/21.

23   165. On 8/5/21, I filed a Petition for Writ of Mandate on the issue of Hendrickson striking

24       her own disqualification.

25   166. On 8/9/21, the 6th DCA denied my request for a fee waiver and did not tell me why.

26   167. On 8/10/21, I filed two objections - one for an inadmissible declaration and the other for

27       Aeschleman filing the day before the hearing.

28

168. On 8/11/21, Kuhnle did not appear, instead Judge Blecher presided. Blecher admitted to not having read my filings.

169. On 8/11/21, Blecher refused to issue a Statement of Decision claiming she didn't have to at a law and motion hearing.

170. On 8/11/21, Blecher refused to follow the procedure outlined in Family Code 7605 for need based attorney fees.

171. On 8/11/21, Aeschleman lacked candor with the court when he argued that the partially mediated agreement filed on 9/19/19 was the basis for why Warneck was the primary custodian of the children during the school year when he knew he had conspired with Hayashi to void and alter the agreement without my consent.

172. On 8/11/21, over my repeated objections, Blecher allowed Aeschleman to testify.

173. On 8/11/21, I objected to declarations filed by Aeschleman and Warneck for violations of the court rules on admissible declarations. Blecher overruled the objections.

174. On 8/11/21, I objected to the court's attempted enforcement of a temporary move away as a violation of California law and the due process clauses of the state and federal constitutions.

175. On 8/11/21, I raised the issue of the repeated due process violations and unnoticed motions, and I demanded a trial if Aeschleman wanted to dispute the procedural history of the case.

176. On 8/11/21, Blecher continued my restraining order request on ex parte filings and my OSC for contempt to 10/5/21.

177. On 8/11/21, Belcher continued my request for access to my court file until 10/5/21.

178. On 8/11/21, Blecher ordered another illegal temporary move-away demanding that I return my kids into abduction on 8/22/21.

179. On 8/23/21, at midnight, I filed a Statement to Disqualify Blecher for bias, and to provoke a written response from her given her refusal to issue a statement of decision.

180. On 8/23/21, Blecher signed a FOAH sent to her ex parte by Aeschleman in violation of California Rule of Court 5.125. She signed it after she lost jurisdiction due to my statement to disqualify her.

181. On or about 8/24/21, Aeschleman filed yet another fraudulent ex parte with the court. Kuhnle, who had never presided at a hearing in this case, stripped me of all legal and physical custody of my children without any notice whatsoever.

182. On 8/26/21, Rich Horn of the El Dorado County, CA District Attorney's office opened an investigation against me for parental abduction at the request of Aeschleman and Warneck. This investigation is memorialized in at least two reports. In those reports, he barely mentions my regular and ongoing contact with him and his office for the previous two years, and does not mention any of the numerous crimes I accused Warneck and Aeschleman of committing, including fraud upon the Santa Clara court, and which I reported to him.

183. On 8/31/21, Blecher struck her own disqualification. In the order, she fabricated an agreement I never made. The alleged agreement was her stated reason for her order directing me to return the children to California.

184. On 9/3/21, Horn called me and accused me of violating secret family court orders. Suspecting law enforcement foul play, I did not answer his questions, ended the conversation, and immediately emailed Joe Alexander, Jeffrey Dreher, Rich Horn, and Dave Monroe a California Penal Code 278.7 notice. Attached to the notice were the two letters I sent to Zayner detailing Aeschleman's frauds upon the court, which I had already emailed to Alexander, Dreher, Horn, and Monroe. I also attached my Writ Petition to the California 6th District Court of Appeals regarding Hendrickson striking her own disqualification. Attached to the petition were exhibits in which I pointed to the record where mother admitted to fraud on the court. Nowhere in his investigative reports does Horn discuss this notice or its attachments. He produced these documents later during discovery in the criminal proceeding he initiated.

185. On 9/7/21, Nevada Attorney General Agents Dave Monroe and Gina Lovero came to my home to discuss my kids. I again reported to them the numerous frauds upon the court by Aeschleman and Warneck as well as the due process violations including the secret orders. Monroe admitted to having read the numerous emails I sent to him, Alexander, Horn, and Dreher, but advised me that California corruption was not his problem. The encounter was recorded on my Ring doorbell.

186. On 9/20/21, Kuhnle continued the Santa Clara Court's pattern and practice of allowing Aeschleman to testify and entertaining inadmissible declarations over my objections and in violation of the court rules.

187. On 9/20/21, Kuhnle did not want to let me argue Aeschleman's fraud on the court. I objected, and reminded Kuhnle about the repeated fraudulent ex parte motions.

188. On 9/20/21, I reminded Kuhnle that I had two pending contempt actions against Aeschleman for filing fraudulent ex parte motions.

189. On 9/20/21, Kuhnle refused to issue a Statement of Decision despite me citing the mandate in Family Code 3022.3.

190. On 9/20/21, Kuhnle refused to obey Family Code 7605 relating to need based attorney fees.

191. On 9/20/21, Kuhnle refused to set an evidentiary hearing.

192. On 9/20/21, I testified about Hayashi signing the secret order sent to her ex parte by Aeschleman as well as Aeschleman's other frauds upon the court.

193. On 9/20/21, I testified about Blecher falsifying an agreement I never made in her order striking her own disqualification.

194. On 9/20/21, I objected about the court's refusal to waive fees.

195. On 9/20/21, Kuhnle solicited Aeschleman to email him a pre-drafted order.

196. On 9/20/21, I objected to the proposed order on due process grounds.

197. On 9/20/21, Kuhnle made several edits to the order and then signed it.

198. On 9/20/21, I moved Kuhnle to stay the order, but he denied the stay.

199. On 9/20/21, I moved Kuhnle for an order granting me access to my court file; he
   refused.

200. On 9/20/21, Aeschleman did not disclose to Kuhnle his knowledge that Blecher's
   previous order was based on the mistaken belief that I had agreed that Warneck was the
   primary custodian during the school year.

201. Neither on 9/20/21, nor in his filings which prompted the hearing, did Aeschleman
   disclose to Kuhnle that prior to this hearing, 56,000 people had been evacuated from the
   South Lake Tahoe area due to the Caldor Fire.

202. On 9/20/21, Kuhnle ordered me to return my children into abduction based solely on the
   unnoticed and fraudulent assertions of Aeschleman.

203. On 9/20/21, Horn witnessed the hearing.

204. On 9/21/21, Horn filed a fraudulent investigative report in which he concealed my
   whole history with him, all the exculpatory evidence I had given him, and what he
   witnessed at this hearing.

205. On 9/23/21, the 6th DCA denied my Writ Petition RE: Hendrickson's disqualification.

206. On 9/24/21, El Dorado Deputy District Attorney Brittany Griffith executed, under
   penalty of perjury, a Declaration in Support of Warrant of Arrest.

207. On 9/24/21, Griffith swore in her warrant application, under penalty of perjury, that she
   read and reviewed two investigative reports generated by Horn.

208. On 9/24/21, Griffith executed a criminal complaint, under penalty of perjury, for two
   counts of felony child custody deprivation.

209. On 9/24/21, Griffith applied for a warrant for my arrest. She withheld from the judge
   my two year history with her office, and all the exculpatory evidence I supplied them,
   including mounds of evidence of Aeschleman's frauds on the Santa Clara Superior Court.

210. On 9/27/21, I filed a Petition for Review RE: Hendrickson's disqualification and an
   emergency stay request with the California Supreme Court.

211. On 9/27/21, the California Supreme Court denied my fee waiver request and did not tell
   me why.

212. On 9/28/21, Judge Charles Adams, Supervising Judge, Family Division, Santa Clara County Superior Court sent me a letter closing my complaints to Zayner without action.

213. On 9/29/21, Monroe and Lovero orchestrated my arrest in Las Vegas, NV on the California warrant that they knew had been obtained by fraud. They seized my children and handed them over to Warneck, who took them back to California.

214. On 10/4/21, the California Supreme Court denied my Petition for Review and for an emergency stay.

215. On 10/18/21, I sent the California Supreme Court a letter asking for an explanation on the fee waiver denial.

216. On 10/21/21, the California Supreme Court responded and refused to explain the fee waiver denial or give me a chance to cure.

217. On 12/1/21, I moved Hendrickson for an order granting me remote access to my court file. She refused.

218. On 3/16/22, I filed a motion with the California 6th District Court of Appeals asking it to vacate its order denying me a fee waiver or to explain why it was denied. I also asked for an order granting me access to my superior court file, so that I could prepare an appellate brief.

219. On 4/19/23, Blecher sent me a letter admitting that attorneys have remote access to my court file. Further, she admitted that the court no longer provides court reporters for family matters, and does not use electronic recording for family court proceedings. She refused to issue an order allowing me to record my own proceedings, and stated my only option was to get my own court reporter.

220. On 5/3/22, Hendrickson sua sponte labeled me a vexatious litigant without notice and opportunity to be heard. Her order found motions which had never been heard or addressed on the merits as vexatious. Aeschleman did not disclose his personal knowledge of the procedural history of the case, and again actively defrauded the court at this hearing.

221. On 7/27/22, I wrote to the Presiding Justice of the 6th DCA and requested permission to appeal Hendrickson's vexatious litigant order. I also requested a ruling on the motion filed on 3/16/22 in another appeal.

222. On 8/11/22, the 6th DCA denied my motion to vacate the fee waiver denial and refused to explain why. The appellate court also refused to issue an order granting me access to my superior court file, but invited me to file a Writ Petition (for another $800).

223. On 9/19/22, the 6th DCA dismissed one of my pending appeals for failure to obtain the record on appeal despite know that I had no access to my court file.

224. On 10/7/22, the 6th DCA dismissed my other pending appeal for failure to file an appellate brief despite knowing that I had no access to my court file.

225. On 10/5/23, Hendrickson issued a sua sponte order revoking her order labeling me a vexatious litigant, and admitting she has denied me due process. It is unclear why. Her order stated she would advise the Judicial Council of the revocation. She alleged her desire to provide me with due process, set a hearing, which was later continued to 12/12/23.

226. On 10/18/23, I emailed Hendrickson's clerk. I advised the clerk that I was preparing a federal civil rights lawsuit against Hendrickson and other judges, that I demanded due process, and that Hendrickson's continued collusion with Aeschleman was judicial misconduct. I also reminded Hendrickson of her duty to recuse herself. Finally, I advised that I had no interest in sua sponte being dragged back into court on the vexatious litigant issue and being extorted for more fees and $1,000 for a court reporter.

227. On 10/27/23, Diamond admitted to the State Bar of California that she had shredded, and did not read, the 6/2021 complaints I sent to her and Zayner pursuant to Local General Rule 3B.

228. On 11/8/23, I was still on the vexatious litigant list. I emailed The Judicial Council of California a copy of Hendrickson's order revoking her prior order labeling me a vexatious litigant and that she would inform the judicial council. I also requested records under public records laws and rules. I asked for a copy of the correspondence from

1    Hendrickson or anyone else from the Santa Clara Court advising the Judicial Council to

2    remove me from the vexatious litigant list.

3   229. On 11/8/23, the Judicial Council emailed me confirmation that they had received my

4    request for judicial administrative records.

5   230. On 12/1/23, I emailed the Judicial Council reminding them of my request for

6    administrative records and that it had been more than 10 days without a response.

7   231. On 12/7/23, I file an ex parte emergency motion with the Santa Clara County Superior

8    Court asking for among other relief, a continuance of the vexatious litigant hearing and

9    an order directing the clerk court to email me a copy of the Register of Actions for the

10    case, as well as copies of the portions of the case file that I request. I advised

11    Hendrickson that I had no way to defend myself against Aeschleman's frauds on the

12    court, and that forcing me to defend a vexatious litigant motion without access to my

13    court file was hardly due process.

14   232. On 12/7/23, I emailed my ex parte to Hendrickson's clerk, because I knew the court

15    clerks would continue their pattern and practice of rejecting filings erroneously, and

16    because time was of the essence, and to create a paper trail.

17   233. On 12/7/23, the court clerk rejected my ex parte filing claiming I was a vexatious

18    litigant and needed a pre-filing order.

19   234. On 12/7/23, I filed a federal civil rights lawsuit in Las Vegas against Hendrickson and

20    numerous other California judges for seizing my children without due process and other

21    constitutional violations. The case was later consolidated with another civil rights lawsuit

22    in Las Vegas.

23   235. On 12/8/23, the Judicial Council emailed me that they had no record of Hendrickson or

24    any one else in the Santa Clara Superior Court or the California 6th District Court of

25    Appeals advising them to remove me from the list.

26   236. On 12/8/23, the court clerk filed my ex parte emergency motion after I threatened a

27    federal lawsuit.

28

237. On 12/12/23, we had a hearing on Hendrickson's sua sponte motion to label me a vexatious litigant. I objected to her hearing the case. I objected to my inability to defend myself without access to my court file. I made numerous objections about due process violations.

238. On 12/12/23, Hendrickson executed a written order relabeling me a vexatious litigant for two reasons: 1) those outlined in the original 5/3/22 order, and 2) for sending emails to the court.

239. On 12/12/23, Hendrickson denied all of my requested ex parte relief.

240. On 1/24/24. Leslie Jensen, Deputy General Counsel for the Santa Clara Superior Court, emailed me a response to my public records request. The email contained a court memorandum dated 9/11/23. In that memorandum is an admission from Lisa Herrick, Assistant Executive Officer and General Counsel, that the Local General Rule 3B complaint process was a sham.

241. On 2/6/24, McGowan sent me a letter denying my request for remote access to my court file. She also denied my request to record in the public areas of the courthouse. She ignored my request to record my proceedings.

242. On 7/8/24, the United States District Court of Nevada dismissed my lawsuit against the California judges for lack of personal jurisdiction.

243. I have not seen my children since they were taken by me on 9/29/21 by Nevada Attorney General agents at gun point. I have not spoken to my children in over two years. I have never had a trial despite my repeated demands. I have never been accused of being an unfit father.

## CLAIMS

### First Claim

Violations of 42 USC 1983; U.S. Const. amend. I & XIV:

Since 2019, the California judicial defendants, acting under color of California law, have deprived me of my constitutional rights to the care, custody, and control of my children

1    without due process. They have denied me my right to freely associate with my children and

2    to petition the government of redress of grievances through corrupt and secretive practices

3    designed to deprive me of those rights. They knowingly and willfully colluded with Warneck

4    and Aeschleman to deprive me of due process through their pattern and practice of refusing

5    to grant me reasonable notice and a meaningful opportunity to be heard, and when they

6    deliberately thumb their nose at the local and state rules of court, the California civil

7    procedure, federal law, and the California and federal constitutions. They are using their

8    positions of power as a weapon to extract money from me while they intentionally deny me

9    due process knowing full well I am going to keep making every attempt to be reunited with

10    my unreasonably seized children. In addition to the vexatious litigant order, their deliberate

11    tactic of impoverishing me through court fees and court reporter fees has chilled my right to

12    petition the government for a redress of grievances and to freely associate with my children.

13

14    **DEMAND FOR RELIEF**

15    I request that this court declare the following:

16    a. that I have a constitutional, fundamental right, to the care, custody, and control of my

17    children.

18    b. certain orders of defendant judicial officers void for lack of jurisdiction and for lack

19    of due process.

20    c. that Shelley Warneck relocated my children from Nevada without prior approval of a

21    court and without my consent, and that she had no legal presumptive right to do so.

22    d. that the pattern and practice of the defendants forcing self represented litigants of

23    parentage cases to obtain copies of their court record from the physical courthouse and

24    charging money per page while simultaneously giving free remote access to lawyers violates

25    the 14th Amendment due process and equal protection clauses.

26    e. that the pattern and practice of the defendants in refusing to allow litigants to record

27    their hearings under threat of criminal prosecution while also refusing to supply court

28

1    reporters or its own recording systems violates the 14th Amendment due process and equal

2    protection clauses.

3        f. that the pattern and practice of defendants refusing to issue a statement of decision

4    while making child custody changes at law and motion hearings violates the 14th

5    Amendment due process and equal protection clauses.

6        g. that the pattern and practice of defendants striking their own disqualifications based

7    on opposition to facts alleged in a statement to disqualify, violates the 14th Amendment due

8    process and equal protection clauses.

9        h. that the pattern and practice of the defendants of refusing to waive fees, and refusing

10   to explain why, violates the 14th Amendment due process and equal protection clauses.

11       i. that the pattern and practice of the defendants in participating in and refusing to

12   report Tristan Aeschleman's professional misconduct violates the 14th Amendment due

13   process and equal protection clauses.

14       j. that the pattern and practice of the defendants in modifying my agreements without

15   notice to me and without my consent violates the 14th Amendment due process and equal

16   protection clauses.

17       h. that the pattern and practice of these defendants in seizing my children, making

18   findings of fact and conclusions of law, and levying large money judgements against me at

19   15 minute motion hearings, over my strenuous objections, based on inadmissible hearsay

20   declarations, and while refusing my demands for a trial or my to the right to cross-examine

21   the declarants violates the 14th Amendment due process and equal protection clauses.

22       i. that the pattern and practice of these defendants in denying me discovery rights

23   violates the the 14th Amendment due process and equal protection clauses.

24       j. such other declaratory relief as becomes apparent during the course of this litigation.

25

26   I request the following injunctive relief:

27

28

a.  temporary restraining order, preliminary and permanent injunction directing Defendant McGowan to grant me remote access to my court file at no cost to include the docket sheet also known as the Register of Actions.

b. temporary restraining order, preliminary and permanent injunction directing Defendant McGowan to allow me to preserve my appellate rights and to protect myself from Santa Clara judges committing crimes in court by audio and visually recording my Santa Clara Superior Court proceedings until and unless the court can supply its own reporters or recording equipment. An order enjoining defendant Guerrero from enforcing California Rule of Court 1.150 in that it is unconstitutional as applied to me, and on its face in that it allows a judge to deny a request for media coverage without a statement of decision. The lack of a statement guarantees that the order is not reviewable.

c. temporary restraining order, preliminary and permanent injunction blocking enforcement of California Family Code 7643 as unconstitutional on its face, and as applied to me.

d. temporary restraining order, preliminary and permanent injunction directing defendant Guerrero to remove my name from the vexatious litigant list, and finding California Civil Procedure 391 - 391.8 unconstitutional as applied to me in that I was found to be a vexatious litigant for writing emails in violation of my 1st Amendment right to petition the government for redress of grievances.

e. such other injunctive relief as becomes apparent during the course of this litigation.

Dated:  July 11, 2024                    By: _____

Michael C. Sternberg
Plaintiff, Self Represented